UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **ROBERT ALLEN RAMIREZ** : | | **DOCKET NO. 14-cv-2981** |
| B.O.P. # 34540-177 | | **SECTION P** |
| | | |
| **VERSUS** : | | **UNASSIGNED DISTRICT JUDGE** |
| | | |
| **FEDERAL CORRECTIONAL** | | |
| **INSTITUTE OAKDALE, ET AL.** : | | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is a Motion for Summary Judgment [doc. 142] filed pursuant to Rule 56 of the Federal Rules of Civil Procedure by Isiah Williams, Thomas Voisine, Caleb Gotreaux, and Roberto Rodriguez-Leon (collectively, "defendants"), defendants in this matter and employees at the Federal Correctional Institute at Oakdale, Louisiana ("FCIO").[1] This motion is filed in response to the civil rights action filed by Robert Allen Ramirez ("plaintiff"), who is proceeding *pro se* and *in forma pauperis* in this matter. Plaintiff is an inmate in the custody of the Bureau of Prisons and is currently incarcerated at the Medical Center for Federal Prisoners in Springfield, Missouri. He opposes the motion [doc. 147] and defendants have filed a reply [doc. 152].

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636. For the following reasons, **IT IS RECOMMENDED** that the defendants' motion [doc. 142] be **DENIED** as to the restroom access claim and **GRANTED** as to the stretcher claim, with the stretcher claim **DISMISSED WITH**

---

[1] Defendants also incorporate the arguments in a Motion for Summary Judgment [doc. 68] filed on behalf of Rodriguez-Leon, which was denied without prejudice [doc. 107] after the court granted plaintiff leave to reinstate certain defendants. Doc. 142, att. 2, p. 1 n. 1.

-1-

**PREJUDICE**. **IT IS ALSO RECOMMENDED** that FCIO be dismissed from the suit due to plaintiff's failure to raise a claim against it. Adoption of this report and recommendation will result in dismissal of FCIO, Gotreaux, and Voisine from the suit.

# I.
## BACKGROUND

On October 17, 2013, plaintiff allegedly slipped and injured his leg while on a work detail at the UNICOR factory at FCIO. Doc. 24, att. 1, p. 2; doc. 142, att. 2, p. 2 (defendants' list of undisputed facts). Plaintiff told prison personnel that he could not walk and was assigned a wheelchair.[2] Doc. 142, att. 2, p. 2. In the first week of December, while plaintiff was still using a wheelchair, the restroom on the first floor of his housing unit, Vernon I, was closed for repairs. Doc. 1, att. 2, p. 1; doc. 102, pp. 2–3. According to plaintiff, he advised defendants Rodriguez-Leon and Williams, officers at FCIO, that because of his leg injury he could not climb the stairs to access the upper-level restrooms. Doc. 1, att. 2, pp. 1–2. However, he contends, prison personnel failed to move him to another unit or otherwise accommodate him, forcing him to climb the stairs to access an available restroom. *Id.*; doc. 102, pp. 2–3.

On the night of December 9, 2013, plaintiff allegedly fell and injured himself while descending the Vernon I unit stairs after using the upper level restroom. Doc. 1, att. 2, p. 2; doc. 102, p. 3. Plaintiff alleges that defendants Gotreaux, Williams, and Voisine responded to the call that an inmate was down, though only Gotreaux and Williams state that they recall the incident. Doc. 24, p. 4; doc. 142, atts. 3–5. Plaintiff asserts that defendants Gotreaux and Voisine aggressively placed him back into his wheelchair, though they deny this and Voisine states that his

---

[2] Plaintiff's medical records, from a clinical encounter that date, show that his left leg was swollen and that "he can walk with extrem[e] difficulty and a limp." Doc. 1, att. 3, p. 3. He was given a bottom bunk restriction and a wheelchair, to be used as an "[assistive] device" with instructions that he still ambulate, and a reevaluation date of November 4, 2013. *Id.* at 4. Plaintiff does not provide any record of that visit, but his clinical encounter from the day after the fall, supra, notes that he was "wheelchair bound secondary to [lymphedema] to lower extremity." *Id.* at 5.

own back problems would have prevented him from lifting an inmate from the floor. Doc. 24, p. 4; *see* doc. 142, att. 2, p. 3; doc. 142, att. 5, p. 2. Defendant Gotreaux escorted plaintiff to a local hospital that night where plaintiff was diagnosed with a lumbar sprain/strain and then released back to the prison. Doc. 142, att. 3, p. 2; doc. 42, pp. 9–10 (hospital records).

Plaintiff filed a *Bivens*[3] suit in this court on October 9, 2014, with several amendments since that time, asserting that the above actions of defendants violated his constitutional rights and that he is entitled to damages and injunctive relief.[4] Doc. 1; doc. 1, att. 2. Defendants now move for summary judgment, alleging that plaintiff has failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act and that, alternatively, the record is devoid of any evidence that they committed a constitutional violation against plaintiff.

## II.
### LEGAL STANDARDS

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material

---

[3] Federal law provides a cause of action against any person who, under the color of state law, acts to deprive another of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. Pursuant to *Bivens v. Six Unknown Named Agents*, 91 S.Ct. 1999 (1971), a *Bivens* action is the counterpart for those acting under color of federal law of a suit brought under § 1983. *E.g.*, *Abate v. Southern Pacific Transp. Co.*, 993 F.2d 107, 110 n. 14 (5th Cir. 1993); *see also Dean v. Gladney*, 621 F.2d 1331, 1336 (5th Cir. 1980) ("The effect of Bivens was, in essence, to create a remedy for federal officers, acting under color of federal law, that was analogous to the section 1983 action against state officials.") In order to hold the defendants liable, a plaintiff must allege facts to show (1) that a constitutional right has been violated and (2) that the conduct complained of was committed by a person acting under color of federal law; that is, that the defendant was a government actor. *See West v. Atkins*, 108 S. Ct. 2250, 2254–55 (1988).

[4] This action originally included a Federal Tort Claims Act ("FTCA") claim against the United States, which was dismissed on plaintiff's voluntary motion to strike. Docs. 81, 89. Plaintiff also named federal contractor Gaeton Galante as a defendant, but Galante was dismissed from the action pursuant to Local Rule 41.3 due to plaintiff's failure to timely effect service. Doc. 129.

fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2511 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). Neither conclusory allegations nor unsubstantiated assertions will satisfy the movant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994 (en banc). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 106 S.Ct. at 2511 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S.Ct. 2097, 2110 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### APPLICATION

#### A. PLRA and Exhaustion

##### 1. Legal standard

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust available administrative remedies before filing a suit based on prison conditions. 42 U.S.C. §

1997e(a); *see Porter v. Nussle*, 122 S.Ct. 983, 988 (2002) (extending the exhaustion requirement to *Bivens* suits). Exhaustion is mandatory for all suits about prison life, whether they involve complaints about general circumstances or particular episodes. *Alexander v. Tippah Cty., Miss.*, 351 F.3d 626, 630 (5th Cir. 2003). Exhaustion means "proper exhaustion," including compliance with all administrative deadlines and procedures. *Woodford v. Ngo*, 126 S.Ct. 2378, 2384–87 (2006). The Fifth Circuit takes "a strict approach" to the exhaustion requirement. *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003), *overruled on other grounds*, *Woodford*, 126 S.Ct. at 2385. Courts have no discretion to waive this requirement and dismissal is required when the inmate fails to exhaust before filing suit. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

The administrative remedy program ("ARP") for federal inmates is provided at 28 C.F.R. § 542.10 *et seq.*, and includes a three-step formal process. The inmate files an informal resolution attempt (BP-8), though there are several cases in which this is not required. 28 C.F.R. § 542.13. The first formal step of the ARP is the filing of a written administrative remedy request (BP-9) with the warden. *Id.* at § 542.14. The BP-9 must be filed within 20 days of the incident. *Id.* at § 542.14. If the inmate is dissatisfied with the warden's response, he may file an appeal (BP-10) with the appropriate regional director within 20 days of the warden's response.[5] *Id.* at § 542.15(a). An inmate who is not satisfied with the regional director's response may submit an appeal (BP-11) to the general counsel within 30 days of that response. *Id.* Appeal to the general counsel is the final step of the ARP. *Id.* The deadlines described above may be extended if the inmate can show valid reason for his delay in filing. *Id.* at §§ 542.15(a), 542.14(b).

A claim is not exhausted through the administrative remedy procedure unless it is presented with sufficient detail to "give[] officials a fair opportunity to address the problem that will later

---

[5] The inmate may also bypass the warden/institutional stage and file his request directly with the regional director. *Id.* at 542.14(d).

form the basis of the lawsuit." *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). Inmates who begin the administrative remedy grievance process and then halt it prematurely have not properly exhausted their administrative remedies, and substantial compliance does not satisfy the exhaustion requirement. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).

Exceptions to the exhaustion requirement are appropriate where "the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Gallegos-Hernandez v. United States*, 688 F.3d 190, 194 (5th Cir. 2012). Exhaustion is not excused, however, merely because a prisoner believes that his efforts in securing relief will be futile. *Obriecht v. Raemisch*, 517 F.3d 489, 492 (7th Cir. 2008) (citing *Booth v. Churner*, 121 S.Ct. 1819, 1825 n. 6 (2001)). These exceptions apply only in extraordinary circumstances and the plaintiff bears the burden of demonstrating the futility of administrative review. *Schipke v. Van Buren*, 239 Fed. App'x 85, 86 (5th Cir. 2007). Such exceptions have been found, for instance, where prison officials refused to provide an inmate with necessary forms or give him false information about the grievance process, and when a prisoner's injury prevented him from filing a grievance. *Aceves v. Swanson*, 75 Fed. App'x 295, 296 (5th Cir. 2003) (unpublished); *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010); *Days v. Johnson*, 322 F.3d at 867–68.

### 2. *Application*

The defendants maintain that they are entitled to summary judgment based on plaintiff's failure to exhaust. They show that plaintiff filed administrative grievances related to his medical treatment following the October 2013 fall but that these grievances did not describe the incidents or parties involved in the claims raised here. Doc. 142, att. 2, p. 6; *see* doc. 142, att. 7.

In his opposition to this motion, plaintiff shows that he completed a BP-8, multiple BP-9s. a BP-10, and a BP-11 relating to the denial of restroom access and the December 2013 fall. *See* doc. 147, att. 1, pp. 1–4, 6, 10–13, 18, 23–24. All of these were rejected on procedural grounds, due to plaintiff's failure to file within the time delays set forth above or failure to comply with other procedural requirements. *See id.* at 14–15, 16–17, 21, 22, 25. Plaintiff maintains that he was unable to comply with many of the appeal deadlines for this ARP because prison officials changed the date on which his BP-8 was filed, making it appear too late; because officials erroneously advised him to skip the institutional appeal and instead file a "sensitive" BP-10; and because he was hospitalized for a month shortly after filing his BP-10. Doc. 147, p. 2. Given the documentation supplied by plaintiff in support of his exhaustion requirement, the interference by staff and other circumstances alleged above, and our obligation to review the evidence in a light most favorable to him and draw all inferences in his favor, we must conclude that his claims were alleged with sufficient detail in those grievances to satisfy exhaustion standards and that his failure to comply with certain procedural requirements is excusable under the case law cited above. Accordingly, defendants fail to show a right to summary judgment on this basis.

### B. *Deliberate Indifference Claims*

Plaintiff alleges that defendants' actions, in failing to provide him with a wheelchair-accessible bathroom and in moving him roughly back to his wheelchair after the alleged fall, violated his rights under the Eighth Amendment.

Deliberate indifference to a prisoner's serious medical needs by prison officials violates the Eighth Amendment and therefore gives rise to a claim under § 1983/*Bivens*.[6] *Estelle v. Gamble*,

---

[6] Prison officials also violate the Eighth Amendment when they use excessive force against inmates. The core judicial inquiry for such claims is "whether force was applied . . . maliciously and sadistically for the very purpose of causing harm" – in other words, whether there was an "unnecessary and wanton infliction of pain." *Hudson v. McMillan*, 112 S.Ct. 995, 998 (1992). Despite the allegation that he was roughly moved from the ground to his wheelchair, however,

-7-

97 S.Ct. 285, 291–92 (1976). Under this theory, a prison official is not liable unless he both knows of and disregards an excessive risk to inmate health or safety. *Farmer v. Brennan*, 114 S.Ct. 1970, 1977–79 (1994). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind;" thus the test is "[s]ubjective recklessness" as used in criminal law. *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997) (quoting *Farmer*, 114 S.Ct. at 1980).

### *1. Restroom/housing assignment*

Plaintiff alleges that, after becoming aware of the remodel on the first floor restroom on Vernon I, he advised Williams and Rodriguez-Leon that, because of his leg injury, he could not climb the stairs to access the upper-level restrooms. Doc. 1, att. 2, pp. 1–2. However, he contends, they failed to move him to another unit or otherwise accommodate him, resulting in his fall after he was forced to climb the Vernon I stairs to access a restroom. *Id.* Defendants assert that there is no genuine issue as to any material fact, and that they are entitled to judgment as a matter of law.[7] *See* doc. 142, att. 2, pp. 9–10.

Williams, a lieutenant, and Rodriguez-Leon, a Special Investigative Supervisor technician, maintain that they had no responsibility for plaintiff's housing assignment. *See* doc. 68, att. 4 (declaration of Rodriguez-Leon); doc. 142, att. 4 (Williams). Defendants also provide a declaration from Ron Lee, unit manager for the Vernon I housing unit, who states that plaintiff was granted permission to use handicap accessible restrooms in the Vernon II unit during the Vernon I unit

---

plaintiff does not appear to be raising an excessive force claim and instead seems to intend this as another arm of his deliberate indifference claim, as he raises this allegation in connection with the officers' exacerbation of his injury through their failure to use a stretcher. *See, e.g.*, doc. 24.

[7] Though he raised the issue of qualified immunity in his answer [doc. 48, p. 1], Rodriguez-Leon did not argue qualified immunity in either this motion or his preceding motion for summary judgment. *See* doc. 142, att. 2; doc. 68, att. 2. Williams also asserted qualified immunity, apparently for all claims, in his answer [doc. 119, p. 1] but only argues the issue on the second claim, below, in his motion for summary judgment. *See* doc. 142, att. 2, pp. 9–10. Accordingly, we do not consider whether either defendant is entitled to summary judgment on this claim on the basis of qaulified immunity.

restroom remodel, thus eliminating his need for a housing change or any requirement that he climb stairs in order to access a restroom.[8] Doc. 142, att. 6. Plaintiff argues that lieutenants and other senior officers are allowed to move inmates to different units "if there is some sort of problem." Doc. 147, p. 1; *see also* doc. 142, att. 4, p. 2 (Williams declaration, stating that he would only change an inmate's housing assignment in an emergency situation); doc. 142, att. 6, p. 3 (Lee declaration, stating that although unit managers handle most moves and those usually occur during day shifts, the operations lieutenant has authority to move an inmate during morning and evening watch hours). He denies that he was given permission to use another unit's restroom and argues that a memorandum should have been issued if that was the case. Doc. 147, pp. 1–2.

While factual allegations in sworn or verified pleadings are acceptable summary judgment evidence and may be treated as affidavits, unsworn pleadings, memoranda, and the like generally are not. *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003); *Larry v. White*, 929 F.2d 206, 211 n. 12 (5th Cir. 1991). In his original complaint, plaintiff declared under penalty of perjury "that all of the facts represented in this complaint **and any attachments hereto** [are] true and correct." Doc. 1, p. 4 (emphasis added). We thus consider the attached "memorandum"[9] to be an unsworn declaration under 28 U.S.C. § 1746, making it competent summary judgment evidence. There plaintiff alleged that he was wheelchair-bound due to his October 2013 leg injury, that he advised defendants Williams and Rodriguez-Leon of his inability to climb the Vernon I unit stairs to access the restroom and requested accommodation, that they assured him they would address the situation

---

[8] Lee states that he recalled plaintiff using a wheelchair and that plaintiff wanted to move from the Vernon unit to another unit because he said he needed to use a handicap shower. Doc. 142, att. 6, p. 2. This request was denied, according to Lee, because there were no open cells to accommodate him. *Id.* At a town hall meeting of Vernon I inmates, according to Lee, plaintiff was then given approval to use the restrooms on the Vernon II side, which also gave him access to handicap showers. *Id.* Lee maintains that "[t]his action eliminated any need to move him to another housing unit" and that "[a]t no time did [plaintiff] need to traverse the stairs of the Vernon I unit to use the shower or restroom." *Id.*

[9] This document is actually a series of factual allegations, given the title "Statement of Claim" by plaintiff, and was only designated as a "Memorandum/Brief" when electronically entered into CM/ECF.

but then did not, and that he was thus restricted to use of the second-floor restrooms in the Vernon I unit during the remodel, leading to his fall as he attempted to descend those stairs on December 9, 2013.[10] Doc. 1, att. 2.

Given the standards of review for this motion and the absence of any documentary proof in support of Lee's contention above, there is an issue of fact on whether FCIO staff, including defendants, failed to respond to plaintiff's request for accommodation. Accordingly, we consider whether defendants may nevertheless be granted summary judgment on their claim of no constitutional violation.

In this case, the alleged violation is a claim of deliberate indifference to inmate safety on the part of Williams and Rodriguez-Leon. As noted above, deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotations omitted). To be liable on such a claim, a defendant "must be aware of facts from which the inference that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 114 S.Ct. 1970, 1979 (1994). The Fifth Circuit provides the following guidance:

> There is no concise definition of what types of prison conditions pose a substantial risk of serious harm under the Eighth Amendment. Instead, we examine this component of the test contextually, making sure to be responsive to contemporary standards of decency. We must consider whether society considers the risk . . . to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.

*Horton v. Cockrell*, 70 F.3d 397, 401 (5th Cir. 1995) (footnotes and internal quotations omitted). A plaintiff may rely on circumstantial evidence to show the defendant's knowledge of such a

---

[10] The remaining amended complaints are not properly sworn or verified. Fortunately for the plaintiff, however, the factual allegations therein are largely duplicative of the ones asserted in the original complaint with respect to the claims considered in this action. They only differ materially with respect to the plaintiff's claims against former defendant Galante and his claims under the Federal Tort Claims Act, which were dismissed as described above.

risk, if he can show that the risk was so significant that the defendant must have been aware of it. *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003).

The Fifth Circuit recently affirmed a grant of summary judgment for prison officials, finding no deliberate indifference based on their alleged transport of a wheelchair-bound inmate in a van without tie-down straps for securing his chair, resulting in the inmate's leg being jostled and reinjured. *Crumbliss v. Darden*, 469 Fed. App'x 325 (5th Cir. 2012) (unpublished). In that matter, the court upheld the district court's conclusion that "the evidence did not demonstrate a subjective belief on the part of the defendants that Crumbliss was being placed at substantial risk of serious harm." *Id.* at 327.

As plaintiff notes, the Ninth Circuit reversed summary judgment and held that denial of handicap-accessible shower facilities to a pretrial detainee who relied on crutches and later slipped in the regular shower supported a claim of deliberate indifference. *Frost v. Agnos*, 152 F.3d 1124, 1128–30 (9th Cir. 1998). Moreover, after its unpublished decision in *Crumbliss*, the Fifth Circuit distinguished *Frost* from the general rule that slip-and-falls do not give rise to constitutional claims. *Coleman v. Sweetin*, 745 F.3d 756, 764–65 (5th Cir. 2014). It emphasized that the Ninth Circuit's decision "rests on defendants' failure to accommodate [the inmate's] disabled condition, not simply on the slippery floor." *Id.*

Despite evolving standards and expectations regarding accessibility of facilities in the public at large, a survey of other federal court decisions reveals little consensus on whether a prison's failure to provide accessible facilities or cells amounts to deliberate indifference.[11]

---

[11] *Compare, e.g.*, *Strominger v. Brock*, 592 Fed. App'x 508, 511 (7th Cir. 2014) (unpublished) (noting that the evidence, showing wheelchair-bound inmate who was transferred out of his accessible cell for security reasons for a period totaling eight days and fell on the second day, did not show deliberate indifference and "does not allow an inference that [the inmate] was deprived of life's necessities, but only that his mobility and access to the toilet were made a little more difficult on a very temporary basis") *with Shariff v. Coombe*, 655 F.Supp.2d 274, 297–300 (S.D.N.Y. 2009) (finding deliberate indifference where prison did not provide wheelchair-bound inmates with accessible restrooms, forcing them to soil themselves several times a week).

Reflecting the fact-intensive nature of this inquiry, however, courts have given particular weight to the amount of time an inmate's access to prison facilities is limited by the defendant's failure to accommodate him – otherwise the defendant's actions are seen as negligence, at best. *See, e.g.*, *Crockwell v. Dart*, 2016 WL 4493456 at *3 (N.D. Ill. Aug. 26, 2016); note 11, supra.

In this matter, we cannot properly consider the length of the alleged limits on plaintiff's restroom access. Defendants maintain that plaintiff was allowed to use other restrooms that were accessible to him, while plaintiff does not allege whether the limitation continued after his fall. *See* doc. 1, att. 2. Even if these limitations only lasted until the fall, however, we would still find that the conditions alleged – by which this plaintiff was required not to move across a less-accessible cell, but to climb a flight of stairs, in order to access the facilities – indicative of deliberate indifference. These conditions involved risks "so grave that it violates contemporary standards of decency to expose anyone unwillingly to [them]."[12] *Horton*, 70 F.3d at 401. Plaintiff's wheelchair-bound status combined with the request he allegedly made to both Williams and Rodriguez-Leon is enough to support an inference that the defendants were aware of this risk and disregarded it through their alleged failure to act. Accordingly, a genuine issue of material fact remains on whether a constitutional violation was committed and Williams and Rodriguez-Leon are therefore not entitled to summary judgment on this claim.

### 2. *Failure to use stretcher*

Plaintiff also alleges deliberate indifference on the part of defendants Gotreaux, Williams, and Voisine, based on their response to his December 2013 fall. These defendants likewise maintain that there is no genuine issue as to any material fact, and that they are entitled to judgment

---

[12] We distinguish this matter from *Crumbliss*, supra, noting that that case only involved an inmate's transportation to a family member's funeral and not a restriction on access to a daily life activity, thus rendering the risk more substantial in this case. 469 Fed. App'x at 326.

as a matter of law on the constitutional claim or, alternatively, shielded by the doctrine of qualified immunity. Doc. 142, att. 2. We first determine whether defendants have carried their burden of showing no constitutional violation before determining whether qualified immunity analysis is indicated.

In his "memorandum," which we have determined to be competent summary judgment evidence above, plaintiff states that, after his December 2013 fall, Officer Lejeune responded and radioed defendant Williams. Doc. 1, att. 2, p. 2. Williams responded that Lejeune should lay plaintiff down and have him go to sick call in the morning, but Lejeune immediately radioed back and explained that "it was worse [than] he thought and medical attention was needed." *Id.* Williams, Gotreaux, and Voisine then arrived on the scene and began telling plaintiff, "Ramirez, you need to get up[.] [W]e will not help you unless you get up." *Id.* When an inmate advised the officers that there was a stretcher by the ice machine, Gotreaux said, "[T]ake your ass back to your cell." *Id.* at 2–3. Gotreaux then advised Voisine to grab plaintiff's arm, and plaintiff "was aggressively yanked up and slammed [into his] wheelchair," "hard enough to take the air out of his body." *Id.* at 3. As the defendants moved plaintiff to the front of the institution, another inmate asked why they did not use a medicart (a golf cart with a gurney) to transport him and Voisine responded that plaintiff would not die if he got cold and wet. *Id.* Plaintiff contends that a CT scan taken at the hospital showed "significant damage" to his lower spine. *Id.* On their return to FCIO, he alleges, Gotreaux stated, "[Y]ou f___ed up my night[;] we will see how long it takes us to get to the unit in the cold misty [weather]." *Id.* at 3–4.

In their declarations, Gotreaux and Williams state that they recall responding to a report of an injured inmate and finding plaintiff in the Vernon I unit, but cannot recall plaintiff saying that he was hurt or needed medical a stretcher. Doc. 142, att. 3, pp. 1–2 (Gotreaux declaration); doc.

142, att. 4, p. 2 (Williams declaration). Gotreaux also states that he assisted plaintiff back to his wheelchair and escorted him to the hospital. Doc. 142, att. 3, p. 2. He denies slamming plaintiff into his chair "or otherwise physically abusing him." *Id.* Voisine has no recollection of the incident but maintains that he could not have lifted Ramirez off of the floor because of his own chronic back issues. Doc. 142, att. 5. All defendants deny that they did or would have spoken to plaintiff in the manner alleged. Doc. 142, atts. 3–5.

A prisoner's disagreement with his treatment does not constitute deliberate indifference, absent exceptional circumstances. *Gobert*, 463 F.3d at 346. Instead, the prisoner must submit evidence to show that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct evincing a wanton disregard for serious medical needs. *Id.* Here the defendants have shown that they did not believe a stretcher or other medical transport was required and emphasize that plaintiff was released from the hospital that night. Plaintiff relies on his description of his injury and the opinions of another guard and other inmates in an attempt to rebut this showing.

A similar claim was dismissed as frivolous in *Augustine v. Pacheco*, 2009 WL 1230003 (W.D. La. May 5, 2009), when the plaintiff complained of defendants' failure to call an ambulance or transport him to the infirmary on a stretcher after he slipped on a wet floor and allegedly sustained back, neck, and knee injuries. There the court emphasized the plaintiff's obligation to "prove objectively that he was exposed to a substantial risk of serious harm," and determined that his claims instead described a disagreement with his medical care. *Id.* at *2–*3 (quoting *Victoria W. v. Larpenter*, 369 F.3d 475, 483 (5th Cir. 2004)) (emphasis removed); *see also Crumbliss*, supra, 469 Fed. App'x at 326–27. In this matter, plaintiff likewise fails to provide probative evidence in support of the risk of harm at which defendants allegedly placed him. Furthermore,

his own exhibits show that he was afforded timely medical care in response to his December 2013 fall, both at the hospital and in a follow-up visit to Health Services at FCIO the following day, and that he was only diagnosed with a lumbosacral sprain.[13] *See* doc. 42, att. 1, pp. 8–10 (records from Oakdale Community Hospital and FCIO on back injury). Accordingly, even viewed in a light most favorable to him, plaintiff's evidence is insufficient to show that he was exposed to a substantial risk of serious harm by the defendants.

To the extent that plaintiff intends to raise a claim based on the manner in which the defendants spoke to him, this claim cannot survive a motion for summary judgment. "[M]ere threatening language or gestures of a custodial officer do not, even if true, amount to constitutional violations." *Robertson v. City of Plano, Tex.*, 70 F.3d 21, 24 (5th Cir. 1995) (alteration omitted); *see also Hines v. Cain*, 2007 WL 891880 at *4 (E.D. La. Mar. 20, 2007) (collecting cases); *see also Hudson v. Univ. of Tex. Medical Branch*, 441 Fed. App'x 291, 292–93 (5th Cir. 2011) (finding that mere threats also fail to support a claim of retaliation). Allegations of callous or rude behavior alone in the provision of medical care also fail to support a deliberate indifference claim. *Atkins v. Lofton*, 373 Fed. App'x 472, 473 n. 1 (5th Cir. 2010) (unpublished); *Frederick v. Pittman*, 2014 WL 4729407 at *8 (S.D. Tex. Sep. 23, 2014). Even if the defendants delivered each utterance as alleged, these utterances would be insufficient to show a constitutional violation in light of the constitutional adequacy of their response to his fall.

Accordingly, there is no genuine issue as to any material fact on plaintiff's claim regarding the defendants' response to the fall and defendants are entitled to judgment as a matter of law on this claim. Based on this finding, we need not consider the issue of qualified immunity.

---

[13] In various complaints and responses, plaintiff has complained about his care since that point. However, his grievance appears to be with the treatment of his leg injury. *See, e.g.*, doc. 42, pp. 3–5. He does not appear to allege that the response to his back injury played any role in worsening his leg injury.

### *3. FCIO as defendant*

We note that plaintiff lists FCIO as defendant in the captions of his complaints, though it does not appear that he has ever alleged any wrongdoing on the part of the warden or institution itself. Vicarious liability does not apply in a civil rights suit; supervisors may only be held liable if they personally violated the plaintiff's constitutional rights. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009). We cannot assume that plaintiff intends to hold this defendant liable for the above employees' actions, and plaintiff's failure to allege how the prison or, as he more likely intended, warden personally violated his rights results in a lack of any viable claim against that entity. Accordingly, FCIO should be dismissed from the suit.

## IV.
### CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the defendants' Motion for Summary Judgment be **DENIED** as to the restroom access claim and **GRANTED** as to the stretcher claim. The stretcher claim should thus be **DISMISSED WITH PREJUDICE**. **IT IS ALSO RECOMMENDED** that FCIO be dismissed from the suit due to plaintiff's failure to raise a claim against it. Adoption of this report and recommendation will result in dismissal of FCIO, Gotreaux, and Voisine from the suit.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon

grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 14th day of February, 2018.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE